# EXHIBIT A

# THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you, or your attorney, do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

TO: **TRANS UNION L.L.C.**, which may be served with process by serving its registered agent, **THE PRENTICE-HALL CORPORATION SYSTEM, 211 E. 7th STREET, SUITE 620, AUSTIN, TX 78701-3218**

Greetings:

You are hereby commanded to appear by filing a written answer to the Plaintiff's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable **168th Judicial District Court,** El Paso County, Texas, at the Court House of said County in El Paso, Texas.

Said Plaintiff's Original Petition was filed in said court on the 9th day of June, 2020, by Attorney at Law, CARLA L. SANCHEZ-ADAMS, 4920 N INTERSTATE HIGHWAY 35, SUITE 200, AUSTIN, TX 78751 in this case numbered **2020DCV1931** on the docket of said court, and styled:

**Juan Sanchez**
**V.**
**Equifax Information Services, L.L.C., Experian Information Solutions, Inc., and Trans Union L.L.C.**

The nature of Plaintiff's demand is fully shown by a true and correct copy of the Plaintiff's Original Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at El Paso, Texas, on this the 11th day of June, 2020.

Attest: NORMA FAVELA BARCELEAU, District Clerk, El Paso County, Texas.

CLERK OF THE COURT
**NORMA FAVELA BARCELEAU**
District Clerk
El Paso County Courthouse
500 E. San Antonio Ave, RM 103
El Paso, Texas 79901

_____, Deputy
JoAnn Acosta

ATTACH RETURN RECEIPTS WITH ADDRESSEE'S SIGNATURE
Rule 106 (a) (2) the citation shall be served by mailing to the defendant by Certified Mail Return receipt requested, a true copy of the citation. Sec. 17.027 Rules of Civil Practice and Remedies Code if not prepared by Clerk of Court.

CERTIFICATE OF DELIVERY BY MAIL
I hereby certify that on this the 11th day of June, 2020 at 10:49 AM I mailed to:
Trans Union L.L.C., c/o The Prentice-Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218
Defendant(s) by registered mail or certified mail with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the Plaintiff's Original Petition attached thereto.

_____
Robert Clark, Senior
TITLE

| *NAME OF PREPARER | TITLE |
|---|---|
| ADDRESS | |
| CITY    STATE    ZIP | |

# RETURN OF SERVICE

Delivery was completed on _____, delivered to_____

_____ as evidence by Domestic Return Receipt PS Form 3811 attached hereto.

    The described documents were not delivered to the named recipient. The certified mail envelope was returned undelivered marked _____.

    This forwarding address was provided: _____

ARTICLE NO. : 7160 1019 9040 0431 8336

SENT TO: Trans Union L.L.C., c/o The Prentice-Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218

POSTAGE: $0.37
FEE: $2.30
RETURN RECEIPT FEE: $1.75

DATE SENT: 06/11/2020

SENDER'S NAME: JoAnn Acosta

THIS ENVELOPE CONTAINS: Plaintiff's Original Petition

El Paso County, Texas

By:_____
    Deputy District Clerk

OR

_____
Name of Authorized Person

By:_____

# VERIFICATION BY AUTHORIZED PERSON

State of Texas

County of El Paso

    Before me, a notary public, on this day personally appeared _____, known to me to be the person whose name is subscribed to the foregoing Return of Service, and being by me first duly sworn, declared, "I am disinterested party qualified to make an oath of that fact and statements contained in the Return of Service and true and correct."

Subscribed and sworn to be on this _____ day of _____, _____.

_____
Notary Public, State of _____
My commission expires:_____

Case 3:20-cv-00188-KC   Document 1-1   Filed 07/01/20   Page 4 of 16

El Paso County - 168th District Court

Filed 6/9/2020 2:51 PM
Norma Favela Barceleau
District Clerk
El Paso County
2020DCV1931

CAUSE NO. _____

| | | |
|---|---|---|
| JUAN SANCHEZ, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | _____ JUDICIAL DISTRICT |
| EQUIFAX INFORMATION SERVICES, | § | |
| L.L.C., EXPERIAN INFORMATION | § | |
| SOLUTIONS, INC., AND TRANS UNION | § | |
| L.L.C., | § | |
| Defendants. | § | EL PASO COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff, JUAN SANCHEZ, files this petition and shows the Court as follows:

## CLAIM FOR RELIEF

1.     This suit requests monetary relief over $1,000,000, plus attorney fees and costs pursuant to the Fair Credit Reporting Act.

## DISCOVERY CONTROL PLAN

2.     Discovery is intended to be conducted under Level 2 of Texas Rule of Civil Procedure 190.3. Plaintiff affirmatively pleads that this suit is not governed by the expedited actions process in Texas Rule of Civil Procedure 169 as Plaintiff seeks monetary relief exceeding $100,000.

## PARTIES

3.     Plaintiff Juan Sanchez (Plaintiff) resides in El Paso County, Texas.

4.     Plaintiff is a consumer as defined by the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681a(c).

5.     Defendant Equifax Information Services, L.L.C. (Equifax) is a foreign for-profit corporation organized under the laws of Georgia whose principal office is located at 1550 Peachtree Street NE, Atlanta, Georgia 30309. Equifax is authorized to do business in Texas and may be served with process by serving its registered agent for service of process, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6.     Equifax is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

7.     Defendant Experian Information Solutions, Inc. (Experian) is a foreign for-profit corporation incorporated in the state of Ohio whose principal office is located at 475 Anton Boulevard, Costa Mesa, CA 92626. Experian is authorized to do business in Texas and may be

served with process by serving its registered agent for service of process, C T Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

8.  Experian is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

9.  Defendant Trans Union L.L.C. (Trans Union) is a foreign for-profit corporation organized under the laws of Delaware whose principal office is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union is authorized to do business in Texas and may be served with process by serving its registered agent for service of process, The Prentice-Hall Corporation System, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

10. Trans Union is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

## JURISDICTION

11. This Court has jurisdiction under 15 U.S.C. § 1681p.

12. This Court has personal jurisdiction over Defendants, nonresidents, because Defendants purposefully availed themselves of the privileges and benefits of conducting business in Texas.

## VENUE

13. Venue is proper in El Paso County under Texas Civil Practice & Remedies Code Section 15.002 because all or a substantial part of the events or omissions giving rise to the claims occurred in El Paso County.

## FACTS

14. Sometime in 2018, Plaintiff received a notice from the Social Security Administration (SSA) that he needed to confirm or deny that he received wages in Illinois. At the time, Plaintiff was receiving public benefits from the SSA. Plaintiff had not been able to work since before 2007, which was when the wages in Illinois began. Additionally, Plaintiff never lived anywhere besides El Paso, Texas.

15. As a result, Plaintiff went to the office of Texas RioGrande Legal Aid, Inc. to seek help with straightening this issue out with the SSA. He was not sure if the SSA had confused him with someone else or if he was a victim of identity theft.

16. Since Plaintiff wanted to find out what was going on with his identity, he requested his credit reports. On or around June 13, 2018, Plaintiff requested his credit reports.

## FACTUAL ALLEGATIONS REGARDING EQUIFAX

17. Equifax prepared and furnished credit reports on Plaintiff that contained inaccurate information.

18. On or around June 13, 2018, Plaintiff requested his credit report from Equifax. Equifax failed to provide Plaintiff with his report.

19. Plaintiff was later able to obtain his credit report from Equifax dated June 21, 2018. That Equifax report contained more than 20 credit accounts, including numerous derogatory accounts, that did not belong to him. It also contained names, phone numbers, addresses, employment information, and information pertaining to the furnishing and use of his report that did not belong to him.

20. In July 2018, Plaintiff disputed the inaccurate information to Equifax and asked that it be deleted.

21. Equifax did not respond to the disputes or send him results for more than 45 days.

22. Despite his disputes, Equifax failed to remove or correct all the inaccurate disputed information.

23. In April 2019, Plaintiff obtained his Equifax credit report and saw that it still contained inaccurate information.

24. Plaintiff again disputed the inaccurate information to Equifax.

25. Equifax failed to reinvestigate or delete all the information that Plaintiff had disputed.

26. Equifax wrongfully furnished Plaintiff's credit reports to companies that should not have received it and that were not involved in a credit transaction with Plaintiff.

27. The reports prepared by Equifax caused Plaintiff harm, including:

   a. The inaccurate information in Plaintiff's reports damaged Plaintiff's creditworthiness, made it look like he had more debt than he did, and that he was a different person.
   b. Plaintiff suffered emotional distress. The inaccurate information in Plaintiff's credit reports seemed to Plaintiff to reflect information belonging to his brother. Having this information on his reports has damaged his relationship with his brother. He does not speak to his brother, and it has caused a family divide.
   c. By disclosing private personal and financial information to companies who should not have received Plaintiff's credit reports, Plaintiff suffered an invasion of his privacy.
   d. As a result of all the inaccurate information in his credit reports, Plaintiff has spent time reviewing reports, disputing inaccurate information, and dealing with the consequences of the inaccurate reports.

## FACTUAL ALLEGATIONS REGARDING EXPERIAN

28. Experian prepared and furnished credit reports on Plaintiff that contained inaccurate information.

29. On or after June 13, 2018, Plaintiff obtained his Experian credit report dated June 13, 2018.

30. In his June 13, 2018 Experian report, Plaintiff found addresses, phone numbers, a social security number, employer information, and information pertaining to the furnishing and use of his report that did not belong to him. He also obtained a report dated June 18, 2018 from Experian that had more inaccurate information, including names that were not his.

31. In July 2018, Plaintiff disputed the inaccurate information to Experian and asked that it be deleted.

32. Despite his disputes, Experian failed to remove or correct all the inaccurate disputed information.

33. In September 2019, Plaintiff obtained his Experian credit report and saw that it still contained inaccurate information.

34. Plaintiff again disputed the inaccurate information to Experian.

35. Experian sent him a response that failed to address all the items he had disputed.

36. Experian wrongfully furnished Plaintiff's credit reports to companies that should not have received it and that were not involved in a credit transaction with Plaintiff.

37. The reports prepared by Experian caused Plaintiff harm, including:

   a. The inaccurate information in Plaintiff's reports damaged Plaintiff's creditworthiness and made it look like he was a different person.
   b. Plaintiff suffered emotional distress. The inaccurate information in Plaintiff's credit reports seemed to Plaintiff to reflect information belonging to his brother. Having this information on his reports has damaged his relationship with his brother. He does not speak to his brother, and it has caused a family divide.
   c. By disclosing private personal and financial information to companies who should not have received Plaintiff's credit reports, Plaintiff suffered an invasion of his privacy.
   d. As a result of all the inaccurate information in his credit reports, Plaintiff has spent time reviewing reports, disputing inaccurate information, and dealing with the consequences of the inaccurate reports.

## FACTUAL ALLEGATIONS REGARDING TRANS UNION

38. Trans Union prepared and furnished credit reports on Plaintiff that contained inaccurate information.

39. On or after June 13, 2018, Plaintiff obtained his Trans Union credit report dated June 13, 2018.

40. In his June 13, 2018 Trans Union report, Plaintiff found addresses, phone numbers, name variations, and information pertaining to the furnishing and use of his report that did not belong to him.

41. In July 2018, Plaintiff disputed the inaccurate information to Trans Union and asked that it be deleted.

42. Trans Union failed to provide Plaintiff with results of the reinvestigations of his disputes.

43. Despite his disputes, Trans Union failed to remove or correct all the inaccurate disputed information.

44. In April 2019, Plaintiff obtained his Trans Union credit report and saw that it still contained inaccurate information.

45. Plaintiff again disputed the inaccurate information to Trans Union.

46. Trans Union again failed to provide Plaintiff with results of the reinvestigations of his disputes.

47. Plaintiff requested that Trans Union place a security freeze on his credit report. Despite his request, Trans Union did not place a security freeze on Plaintiff's credit report.

48. Trans Union wrongfully furnished Plaintiff's credit reports to companies that should not have received it and that were not involved in a credit transaction with Plaintiff.

49. The reports prepared by Trans Union caused Plaintiff harm, including:

   a. The inaccurate information in Plaintiff's reports damaged Plaintiff's creditworthiness and made it look like he was a different person.
   b. Plaintiff suffered emotional distress. The inaccurate information in Plaintiff's credit reports seemed to Plaintiff to reflect information belonging to his brother. Having this information on his reports has damaged his relationship with his brother. He does not speak to his brother, and it has caused a family divide.
   c. By disclosing private personal and financial information to companies who should not have received Plaintiff's credit reports, Plaintiff suffered an invasion of his privacy.

    d. As a result of all the inaccurate information in his credit reports, Plaintiff has spent time reviewing reports, disputing inaccurate information, and dealing with the consequences of the inaccurate reports.

## THE FAIR CREDIT REPORTING ACT (FCRA)

### I.     INTRODUCTION AND OVERVIEW

50.     The Fair Credit Reporting Act's purpose is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *See* S. Rep. No. 91-139 (1970); *Hearings on H.R. 16340, Before the Subcomm. on Consumer Affairs of the H. Comm. on Banking and Currency*, 91st Cong. (1970); Dea, FTC Informal Staff Opinion Letter (May 1, 1974) (purpose of Act to "protect privacy of consumers from unrestricted dissemination of information about them by third parties in the business of compiling and selling reports," and to ensure accuracy of reported information).

51.     The FCRA regulates the activities of consumer reporting agencies (CRAs), the users of consumer reports (users), and those who furnish information to CRAs (furnishers). The FCRA also grants consumers certain rights pertaining to access and accuracy of their consumer reports and provides remedies to consumers affected by such reports.

52.     Under the FCRA, CRAs such as Equifax, Experian, and Trans Union must "follow reasonable procedures to assure maximum possible accuracy of the information" in a credit report when preparing the report. 15 U.S.C. § 1681e(b).

53.     Under the FCRA, Equifax, Experian, and Trans Union may only furnish a credit report to a person "it has reason to believe... intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished." 15 U.S.C. § 1681b(a).

54.     Upon request by a consumer, Equifax, Experian, and Trans Union must provide a consumer with all information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a).

55.     When a consumer disputes information in their credit report, Equifax, Experian, and Trans Union must follow specific requirements in response:

    a. They must conduct a reasonable reinvestigation of the disputed information to determine if the information is accurate;
    b. They must notify the source of the information ("furnisher") of the dispute within five business days;
    c. They must provide the furnisher all relevant information received from the consumer;
    d. They must review and consider all relevant information provided by the consumer in conducting the reinvestigation;

    e. They must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified by the furnisher;
    f. They must complete the reinvestigation within 30 days; and
    g. They must send the consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation. 15 U.S.C. § 1681i(a).

56. When a consumer requests a security freeze, Equifax, Experian, and Trans Union must place a security freeze not later than three business days after receiving the request from the consumer (if sent by mail), and must send confirmation of the placement to the consumer, including how to remove the security freeze and how to authenticate their identity, not later than five business days after placing the security freeze. 15 U.S.C. § 1681c-1(i).

## II. THE "MIXED FILE" PROBLEM

57. A major problem in the credit reporting industry is the mixed file. A mixed file occurs when one consumer's information is placed on the consumer report of another consumer.

58. Equifax, Experian, and Trans Union's procedures for matching consumer information to a consumer report often causes the mixing of one consumer with another.

59. Mixed files create a false description of a consumer's credit history and result in the consumer not obtaining credit or other benefits of our economy.

60. Consumers with mixed files often have their confidential personal and financial information wrongfully disclosed when the other consumer is seeking credit, and have their confidential information disclosed to the other person. This violates the consumer's privacy and greatly increases their risk of identity theft.

## III. DEFENDANTS' PRIOR KNOWLEDGE OF THE "MIXED FILE" PROBLEM

61. Mixed files are not a new phenomenon: Equifax, Experian and Trans Union (Defendants) have been aware of mixed files for more than 35 years. *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509 (5th Cir. 1982).

62. Even though every consumer has unique personal identifying information, such as a Social Security number, Defendants mix files. Their systems allow information to be included in a consumer's file even when the Social Security number reported with the information is different from the Social Security number on the consumer's file.

63. Defendants know their matching procedures are causing inaccurate credit reports and mixed files.

64. In the 1990's, the Federal Trade Commission ("FTC") sued Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA including the mixing of consumers' files.

65. In the 1990's, the Attorneys General of numerous states sued Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA including the mixing of consumers' files.

66. In 1991, TRW signed a Consent Order with the FTC. *FTC* v. *TRW, Inc.*, 784 F. Supp. 361 (N.D. Tex. 1991) (consent order), amended by (N.D. Tex. Jan. 14, 1993) (agreed order amending consent order). To prevent the occurrence or reoccurrence of a mixed file, TRW agreed to use a consumer's full identifying information for matching and identification purposes, with "full identifying information" defined as full first and last name, full street address, zip code, year of birth, any generational designation and social security number. *Id.*

67. In 1992, Trans Union signed a Consent Order with the Attorneys General of 17 states. *Alabama v. Trans Union Corp.*, Civil Action No. 92C 7101 (N.D. Ill. Oct. 26, 1992) (consent order). Under that consent order, Trans Union agreed that it would maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files. For example, procedures during the reinvestigation process include, assigning mixed file cases to Senior Investigators who, as appropriate, must pull all files related to the consumer, fully verify disputed information, make any changes, deletions or additions to correct the file and resolve the dispute, and prepare a summary of the problem to be filed with another department for corrective action.

68. In 1992, Equifax signed an Agreement of Assurances with the State Attorneys General. *In re Equifax Credit Information Services, Inc.* (June 22, 1992) (agreement of assurances with attorneys general). Equifax agreed to take specific steps to prevent the occurrence of mixed files and to adopt procedures designed specifically to reinvestigate consumer disputes resulting from mixed files.

69. In 1995, Equifax signed a Consent Order with the FTC. *In the Matter of Equifax Credit Information Services, Inc.*, 120 F.T.C. 577 (Aug. 14, 1995) (consent order). Equifax agreed it would follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file including, but not limited to, procedures to detect logical errors prior to reporting information on a consumer's file, procedures to prevent mixing as a result of data entry by third parties when the third party requests a consumer's report, and procedures during a reinvestigation specifically designed to resolve consumer disputes related to a mixed file.

70. Defendants continue to repeatedly mix consumers' files despite agreements with the FTC and State Attorneys General and hundreds of lawsuits filed against them by consumers whose files have been mixed.

71. When those lawsuits have gone to trial, juries have found that Defendants willfully violated the accuracy and reinvestigation requirements in the FCRA—§§ 1681e(b) & 1681i—and awarded punitive damages as high as $18 million. Yet this "mixed file" problem persists.

72. For example, Equifax's matching logic mixed two consumers' files when only seven out of the nine digits of the two consumers' Social Security numbers matched. *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1224 (D.N.M. 2006).

73. In 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas with another consumer and failing to unmix them despite Ms. Thomas' disputes. The jury awarded Ms. Thomas $5 million in punitive damages and $300,000 in actual damages. Despite the verdict, Trans Union continues to mix consumers.

74. In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $2.7 million in punitive damages and $219,000 in actual damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes.

75. In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, U.S.D.C, District of Oregon, Case No. 3:11-CV-1231-BR, awarded Julie Miller more than $18 million in punitive damages for willfully violating the FCRA by mixing her file with another consumer and failing to unmix them despite Ms. Miller's disputes. Despite this verdict, and the verdict in the *Angela Williams* case, Equifax continues to mix consumers.

76. Notwithstanding federal law, Congressional mandates, federal and state government enforcement actions, and hundreds of consumer lawsuits, Defendants continue to mix consumer files, causing great harm to consumers and the economy.

77. Despite knowing about the breadth and severity of the mixed file problem, Defendants do not follow policies and procedures to ensure compliance with their duties under the FCRA.

## CAUSES OF ACTION AND REQUEST FOR RELIEF

### I. EQUIFAX NEGLIGENT NONCOMPLIANCE WITH THE FCRA

78. Plaintiff incorporates paragraphs 1-77 above in this cause of action.

79. Equifax negligently failed to comply with the requirements of the FCRA.

80. As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

81. Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681o(a).

## II. EQUIFAX WILLFULL NONCOMPLIANCE WITH THE FCRA

82. Plaintiff incorporates paragraphs 1-77 above in this cause of action.

83. Equifax willfully failed to comply with the requirements of the FCRA.

84. As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

85. Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681n(a).

## III. EXPERIAN NEGLIGENT NONCOMPLIANCE WITH THE FCRA

86. Plaintiff incorporates paragraphs 1-77 above in this cause of action.

87. Experian negligently failed to comply with the requirements of the FCRA.

88. As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

89. Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681o(a).

## IV. EXPERIAN WILLFULL NONCOMPLIANCE WITH THE FCRA

90. Plaintiff incorporates paragraphs 1-77 above in this cause of action.

91. Experian willfully failed to comply with the requirements of the FCRA.

92. As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

93. Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681n(a).

### V.     TRANS UNION NEGLIGENT NONCOMPLIANCE WITH THE FCRA

94.   Plaintiff incorporates paragraphs 1-77 above in this cause of action.

95.   Trans Union negligently failed to comply with the requirements of the FCRA.

96.   As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

97.   Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681o(a).

### VI.    TRANS UNION WILLFULL NONCOMPLIANCE WITH THE FCRA

98.   Plaintiff incorporates paragraphs 1-77 above in this cause of action.

99.   Trans Union willfully failed to comply with the requirements of the FCRA.

100.  As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

101.  Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681n(a).

### CONDITIONS PRECEDENT

102.  All conditions precedent necessary to maintain this action have been performed or have occurred.

### JURY DEMAND

103.  Plaintiff demands a jury trial and tenders the appropriate fee with this petition by filing an affidavit of inability to pay court costs as permitted by Tex. R. Civ. Pro. 217.

### PRAYER FOR RELIEF

**WHEREFORE,** Juan Sanchez prays for judgment against each Defendant as follows:

   i.   The above referenced relief requested;

   ii.  Actual damages under the Fair Credit Reporting Act;

iii. Punitive damages under the Fair Credit Reporting Act;

iv. Attorney fees and costs of court;

v. Prejudgment and post-judgment interest as allowed by law;

vi. General relief and all other relief, in law and in equity, to which Juan Sanchez may be entitled.

Respectfully submitted,

**TEXAS RIO GRANDE LEGAL AID, INC.**

/s/ Carla L. Sánchez-Adams
Carla Leticia Sánchez-Adams
Texas Bar No. 24070552
4920 N. IH 35
Austin, Texas 78751
Tel. (512) 374-2763
Fax. (512) 447-3940
csanchez@trla.org


/s/ Stephanie James
Stephanie James
Texas Bar No. 24090990
1331 Texas Avenue
El Paso, Texas 79901
Tel. (915) 585-5145
Fax. (915) 544-3789
sjames@trla.org



**NORMA FAVELA BARCELEAU**
**DISTRICT CLERK**
COUNTY COURTHOUSE RM 103
500 E SAN ANTONIO AVE
EL PASO TX 79901-2436



CERTIFIED MAIL



U.S. POSTAGE >> PITNEY BOWES
ZIP 79901  $ 008.00
02 4W
0000356061 JUN. 12 2020

7160 1019 9040 0431 8336

**TRANS UNION L.L.C.**
**c/o THE PRENTICE-HALL CORPORATION SYSTEM**
**211 E. 7th STREET, SUITE 620**
**AUSTIN, TX 78701-3218**